**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RICKY R. FRANKLIN<br><br>Plaintiff<br><br>v.<br><br>TOP GOLF USA, LLC<br><br>Defendant. | Case No.: 1:26-CV-5071-SDG |

**DEFENDANT TOPGOLF INTERNATIONAL, LLC'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM IN SUPPORT**

Defendant TopGolf International, LLC[1] ("TopGolf" or "Defendant"), by and through its undersigned attorney, hereby moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Complaint filed by Plaintiff Ricky Franklin ("Plaintiff").

## INTRODUCTION

Plaintiff, proceeding *pro se*, brings this individual action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, alleging that he received "automated" or prerecorded text messages from TopGolf without consent. Plaintiff is a serial TCPA plaintiff who has been filing TCPA lawsuits for over a

[1] TopGolf International, LLC is incorrectly identified in the Complaint as "Top Golf USA, LLC." TopGolf International, LLC is the correct legal name of the entity intended to be referenced, and TopGolf International, LLC files this Motion on that understanding.

decade. *See, e.g.*, *Franklin v. Upland Software, Inc.*, No. 1-18-CV-00236-LY, 2019 WL 433650, at *2 (W.D. Tex. Feb. 1, 2019) (recognizing eight years ago that Plaintiff is a serial TCPA plaintiff and holding that the defendant's counter-claims survived a motion to dismiss because defendant produced sufficient evidence that Plaintiff committed fraud on the court by filing the relevant action despite evidence that Plaintiff provided consent or knew the person who provided consent for the calls).[2] Plaintiff's Complaint here should be dismissed with prejudice.

Count I of Plaintiff's Complaint appears to allege a violation of 47 U.S.C. § 227(B) because "calls"—here text messages—were improperly sent via "an artificial or prerecorded voice" or improperly through the use of an automatic telephone dialing system ("ATDS").

Count II of Plaintiff's Complaint appears to allege a violation of 47 U.S.C. § 227(c)(5) because more than two "telephone calls"—here text messages—were made to Plaintiff's phone number allegedly without consent even though his phone number is registered on the federal do not call list..

Counts I and II both require a "telephone call" or "call" for a violation. The main problem for Plaintiff's Complaint is that, since the United States Supreme

---

[2] This Court has already recognized in another unrelated matter involving this Plaintiff that "[Ricky R.] Franklin's Complaint is replete with conclusory and irrelevant allegations regarding the fraudulent assignment of the deed securing his mortgage." *See Franklin v. Carrington Mortg. Servs., LLC,* No. 1:20-CV-04661-SDG, 2021 WL 7708390, at *3 (N.D. Ga. June 9, 2021).

Court's decision in *McLaughlin Chiropractic Ass'n, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Northern District of Georgia has unanimously held in at least five cases that text messages are not "telephone calls" or "calls" under the these sections of the TCPA. *See, e.g.*, *Royal v. Georgia CVS Pharm., L.L.C*, No. 1:26-CV-01357-ELR, 2026 WL 1537161, at *4 (N.D. Ga. May 8, 2026) ("Here, because [*pro se* plaintiff's] TCPA claim based on text messages fails as a matter of law and cannot be rescued by a more carefully drafted complaint, dismissal with prejudice of the TCPA claim, as currently alleged, is warranted."); *Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-CV-00242-LMM, 2026 WL 1098403, at *5 (N.D. Ga. Apr. 20, 2026) ("The Court agrees with Defendant that Plaintiff's claim fails as a matter of law under Rule 12(b)(6) because Section 227(c)(5)'s private right of action is limited to 'telephone call[s],' a term the Court finds does not encompass text messages . . . ."); *Wilson v. Tradercodes*, No. 25-CV-03211-ELR, Dkt. No. 33, at *5 (N.D. Ga. Mar. 17, 2026) (agreeing with "[o]ther courts in this circuit [that] have also found that the language of the TCPA is clear in creating a cause of action based on telephone calls only"); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at *5 (N.D. Ga. Feb. 17, 2026) ("[T]he Court agrees with the decisions in this Circuit concluding that the phrase 'telephone call' in 47 U.S.C. § 227(c)(5) does not encompass text messages."); *Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214-LMM, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026) ("[B]ecause the

Court finds that text messages do not fall within the term 'telephone call' under Section 227(c)(5), Plaintiff's claim fails as a matter of law.").[3]

Plaintiff's Complaint can be dismissed for a few reasons. Count II can be dismissed because the plain meaning of the term "telephone call" in Section 227(c)(5) was fixed at the time the TCPA was enacted in 1991, when text messages did not exist. Count I can be dismissed because the definition of "call" under Section 227(B) similarly does not include text messages. Alternatively, text messages are not "artificial or prerecorded voices," and allegations that an ATDS was used are conclusory. Finally, even if some of Plaintiff's Complaint survives a motion to dismiss, his attempt to seek trebled damages should be dismissed. Because none of these flaws can be fixed, this Court should follow suit with all other Northern District of Georgia cases that were dismissed with prejudice.[4]

---

[3] *See also, e.g., Anthony v. Brian Mktg. Grp.*, No. 24-80800-CIV, 2026 WL 2685650, at *12 n.16 (S.D. Fla. Sept. 11, 2026) ("[T]he Court also determines that the private right of action in § 227(c)(5) for persons receiving 'more than one telephone call within any 12-month period' does not authorize suits by cell phone users based on unwanted text messages (rather than calls))."); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847 (M.D. Fl. Oct. 24, 2025) (same); *Davis v. CVS Pharmacy, Inc.*, No. 4:24-CV-477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025) (same).

[4] In email correspondence, Plaintiff has threatened to amend his Complaint to bring a claim under O.C.G.A. § 46-5-27. Plaintiff has been cautioned that "telephone solicitation" in that Statute is defined as "any <u>voice communication</u> over a telephone line for the purpose of encouraging the purchase or rental of, or investment in, personal property, real property, goods, or services." (emphasis added). Indeed, eleven years ago Judge May shot down another similar attempt by Ricky Franklin proceeding *pro se* to sue Facebook, holding that "Plaintiff does not allege that he has

## FACTUAL BACKGROUND

Plaintiff Ricky R. Franklin filed his Complaint against Defendant on September 3, 2026. ECF No. 1. Plaintiff alleges that, during the summer of 2026, he received a text message from TopGolf on his cellular phone. *Id.* ¶ 14. Plaintiff alleges that "Defendant began to use Plaintiff's cellular telephone for the purpose of sending Plaintiff spam advertisements and/or promotional offers, via text messages, including twenty nine (29) other text messages until the present day." *Id.* Plaintiff alleges that he has never been a customer of TopGolf and never gave prior express written consent to send these messages. *Id.* ¶ 15.

Plaintiff also alleges that at an undisclosed time he placed his cellular phone number on the National Do Not Call list, and that he uses it as his "primary residential number." *Id.* ¶ 16. Plaintiff alleges that thirty text messages over a four month period "came with such persistence and frequency as to amount to a course

---

received any voice communications from Defendant, and there is no Georgia statute comparable to O.C.G.A. § 46–5–27 prohibiting similar telephone solicitations sent via text message." *See Franklin v. Facebook, Inc.*, No. 1:15-CV-00655-LMM, 2015 WL 7755670, at *4 (N.D. Ga. Nov. 24, 2015). Ricky Franklin's attempt a few years later again failed. *See Franklin v. Upland Software, Inc.*, No. 1-18-CV-00236-LY, 2019 WL 433650, at *3 (W.D. Tex. Feb. 1, 2019), *report and recommendation adopted*, No. 1:18-CV-236-LY, 2019 WL 2745748 (W.D. Tex. Mar. 12, 2019) ("Franklin's Complaint is based on unsolicited text messages, not voice communications. Hence, Franklin has failed to demonstrate that he is entitled to judgment as a matter of law as to his Georgia claim."). There have been no relevant amendments to this statute since these rulings.

of hounding the Plaintiff." *Id.* ¶ 23. Citing a Ninth Circuit case from 2009, Plaintiff contends that "text messages are 'calls' within the context of the TCPA," and brings two counts for alleged violations of TCPA calling regulations. *Id.* ¶¶ 5, 24-30.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir.

2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. *Iqbal*, 556 U.S. at 678.

When a plaintiff chooses to proceed pro se, his or her complaint is "held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotation omitted); *see also Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences" contained in complaints filed by pro se litigants. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006) (quotation and citation omitted). And furthermore, pro se plaintiffs are still required to comply with threshold requirements of the Federal Rules of Civil Procedure. *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002).

## ANALYSIS

### I. Count II Should Be Dismissed with Prejudice Under Rule 12(b)(6) for Failure to State a Claim Under the TCPA.

#### A. A "Text Message" Is Not a "Telephone Call," and Therefore Does Not Give Rise to an Action, Under Section 227(c)(5) of the TCPA.

1. <u>The plain and ordinary meaning of "telephone call" at the time of Section 227(c)(5)'s enactment did not encompass "text message."</u>

Section 227(c)(5) confers a private right of action on a "person who has

received more than one telephone call within any 12-month period by on or on behalf of the same entity in violation of the regulations prescribed under this subsection." (emphasis added). A bedrock of statutory interpretation is that courts must interpret every statute "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654 (2020) (emphasis added); *see also Loper Bright*, 603 U.S. at 400. While canons of construction can often play a prominent role in determining the ordinary public meaning of a statutory provision, if the text at issue is clear, a court's "job is at an end." *Id.* at 674.

Here, a "text message" is not a "telephone call" and certainly was not so in 1991—because text messaging did not exist when the TCPA was enacted in 1991. *See, e.g., Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-CV-00242-LMM, 2026 WL 1098403, at *3 (N.D. Ga. Apr. 20, 2026); *Jones v. Blackstone Med. Servs., LLC,* No. 1:24-cv-01074, 2025 WL 2042764 at *4 (C.D. Ill. July 21, 2025). Stated another way, "text messaging had not yet been invented" when Congress used the word "telephone call" in Section 227(c)(5). *See Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017) ("The first text message was sent on December 3, 1992."). Thus, as "various courts in [the Eleventh] Circuit and others have concluded . . . because text messaging was not an available technology in 1991 when the TCPA was enacted, the phrase 'telephone call' would not have included text messages." *Irvin*, No. 3:25-CV-00242-LMM,

2026 WL 1098403, at *3. And because, as the Supreme Court recently emphasized in *Loper Bright*, "the whole point of having written statutes" is that "every statute's meaning is fixed at the time of enactment," 603 U.S. at 400, the term "telephone call" should not be read to mean "text message."

Other portions of the statute help support this natural reading. "Telephone solicitation" is defined in Section 227(a)(4) to mean a "telephone call *or message*" for the purposes of soliciting business. "[C]onstruing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage." *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026). "Congress' use of the phrase 'telephone call or message' in a neighboring provision only undermines [the plaintiff's] position' because '[i]t shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Id.* (quoting *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025)).

Yet, even if this Court finds that the plain meaning of "telephone call" at the time of enactment is ambiguous and looks to the contemporary meaning of the term, this Court should instead follow the reasoning of two recent decisions from this Circuit. As noted by the court and counsel in *Davis*:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the

> sentence “John called Sue” intending to mean “John sent a text message to Sue,” nor would any ordinary reader interpret the sentence in that manner.

*Davis*, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) (formatting alterations). On October 24, 2025, the Middle District of Florida agreed with *Davis* and held that “in common American English usage, a ‘telephone call’ and a ‘text message’ are separate and distinct forms of communication.” *El Sayed*, 2025 WL 2997759, at *2.

2. A Congressional amendment reinforces the distinction between a “telephone call” and a “text message.”

The above analysis should end the inquiry; text messages did not exist in 1991 and therefore could not have been included in the plain meaning of “telephone call” in Section 227(c)(5). Yet this conclusion is further supported by a Congressional amendment to the TCPA. Specifically, in 2018, Congress amended the TCPA to bring “text messages” within its scope under a different provision, 47 U.S.C. § 227(e), regarding Caller ID requirements. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). In doing so, Congress distinguished “a call made using a voice service” from a “text message sent using a text messaging service.” 47 U.S.C. § 227(e)(8)(A), (B).

“When Congress uses different terms, [courts] expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.” *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir.

2025) (citing *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings.")). Congress's amendment of Section 227(e) to include "text messages" demonstrated its understanding of the difference between a telephone call and a text message. "The term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." *El Sayed*, 2025 WL 2997759, at *2; *see also Fernandez*, 135 F.4th at 958 (holding if "calls" encompassed "text messages," then Congress would have prohibited "calls" under Section 227(e)); *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

3. <u>Deference to the FCC's interpretations is not warranted.</u>

Some plaintiffs have argued that courts should give deference to a previous FCC interpretation that "text messages" are calls. The Court should decline this invitation. First, the plain meaning of "telephone call" clearly does not encompass a "text message" and, therefore, the inquiry is at an end. Second, the FCC's rule extending do-not-call protection to text messages should not be afforded any weight

because this construction was issued more than twenty years after the TCPA.

Prior to the Supreme Court's decision in *Loper Bright*, if a court determined that a statute was silent or ambiguous on a specific issue, the court would defer to an agency's interpretation if it was based on a permissible construction of the statute (the "*Chevron* doctrine"). However, the Supreme Court overruled the *Chevron* doctrine in *Loper Bright*. Courts instead must exercise their independent judgment and, when faced with a "doubtful and ambiguous" law, a court may accord due respect to an agency interpretation where, for example, the agency issued a "contemporaneous construction" of the law. 603 U.S. at 385–86. Here, Section 227(c)(5) is not ambiguous, and, even if it were, this Court should not rely on an agency interpretation issued more than twenty years after enactment of the TCPA.

Further, the TCPA does not give the FCC discretion to alter the TCPA's plain language. To be sure, the TCPA *does* provide the FCC certain implementation authority; however, such authority does not permit the FCC to alter the choices made by Congress. *See Ins. Mktg. Coal.*, 127 F.4th at 312-17 (finding the FCC issued an interpretation of the term "prior express consent" in conflict with its plain, common law meaning). Nowhere does the TCPA give the FCC the authority to redefine "telephone call" beyond its plain meaning at the time of enactment, thereby expanding the class of plaintiffs who may file a lawsuit under Section 227(c)(5). As

the Northern District of Georgia has already held,

> Because Congress expressly delegated to the FCC the authority "to give meaning to a particular statutory term" in this case and to "fill up the details of [the] statutory scheme." *See Loper Bright*, 603 U.S. at 395 (citation modified). As one district court noted, this delegation did not authorize the FCC to determine that "telephone call" includes text messages:
>
> That would not be "filling up the details." Determining whether "telephone call" in § 227(c)(5) includes text messages would likely more than double the number of private causes of action authorized by the TCPA. Doubling the scope of the provision is not "filling up the details." In actuality, § 227(c)(1)(E) may run afoul of the nondelegation doctrine, since there are no delimitations on the discretion it grants the Commission.... we [thus] reject Plaintiff's request that we use § 227(c)(1)(E) to resurrect *Chevron* out of the grave. § 227(c)(1)(E) does not require this Court to defer to the Commission's interpretation of § 227(c)(5). And we remind Plaintiff that "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright*, 603 U.S. at 373.

*Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) (quoting *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *2 (S.D.Fla. Jan. 15, 2026)).

Because Plaintiff cannot amend around the fact that text messages are not "telephone calls," this Court should dismiss Count II with prejudice.[5]

**II. Count I Should Be Dismissed with Prejudice Under Rule 12(b)(6) for**

---

[5] Count II can be dismissed for an alternative reason. The relevant provision requires, *inter alia*, that Plaintiff's phone number be on the federal do not call list at the time the marketing calls were made without consent. Although Plaintiff alleges that he "placed" his phone number on the registry and that the phone number "is listed" on the registry, he does not allege that any of the text messages were sent after the listing on the registry. *See* ECF No. 1, ¶¶ 16, 29.

**Failure to State a Claim Under the TCPA.**

Count I should be dismissed for similar reasons. 47 U.S.C. 227(b)(1) states that "[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice." (emphasis added).

First, court in the Northern District of Georgia that hold that a "telephone call" is not a text message also hold that a "call" is not a text message. Thus, Count I can be dismissed. *See, e.g., Royal v. Ga. CVS Pharmacy, L.L.C,* No. 1:26-CV-01357-ELR, 2026 WL 1537161, at *3 (N.D. Ga. May 8, 2026) ("The plain meaning of the word 'call' means the audio communication between two or more cellphone users; 'call' is not ordinarily understood to mean the transmission of written text between cellphone users.").

Second, Plaintiff alleges that the text messages were made using an "artificial or prerecorded voice." Compl. ¶ 25. Undersigned is not aware of any Eleventh Circuit cases addressing this "creative" argument, but the Second and Ninth Circuits have already dismissed it. *See Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 187 (2d Cir. 2024) (holding that a text message is not an "artificial voice" under § 227(b)(1)(A) because "voice" ordinarily refers to "a sound

produced by a human being" and that "Congress meant 'voice' to mean something audible, not a text message"); *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023) ("Congress clearly intended 'voice' in 47 U.S.C. § 227(b)(1)(A) to encompass only audible sounds, because the ordinary meaning of voice and the statutory context of the TCPA establish that voice refers to an audible sound."); *see also Rubin v. Staples, Inc.*, No. 2:25-15515, 2026 WL 881651, at *3 (D.N.J. Mar. 31, 2026) ("A text message is not an audible sound and thus is not an 'artificial or prerecorded voice.'").

Finally, Plaintiff does not sufficiently allege that the messages were sent using an ATDS. "In the Eleventh Circuit, a dialing system is deemed an automatic dialing system only when it is capable of both (1) storing or producing randomly or sequentially generated telephone numbers and (2) initiating calls to those numbers without meaningful human intervention." *Edwards v. Spring Oaks Capital, LLC*, No. 1:25-CV-0825-WMRWMR-JSA, 2026 WL 2212464, at *6 (N.D. Ga. May 26, 2026), *report and recommendation adopted*, 2026 WL 2207321 (N.D. Ga. June 10, 2026). Courts in this Circuit and around the country require the allegation of facts to render plausible the alleged use of an ATDS. In other words, "[a] bare allegation that a defendant used an automatic telephone dialing system is not enough." *Turizo v. Jiffy Lube Int'l, Inc.*, No. 19-61140, 2019 WL 4737696, at *2 (S.D. Fla. Sept. 27, 2019); *see also Martin v. Direct Wines, Inc.*, No. 15-757, 2015 WL 4148704, at *2

(N.D. Ill. July 9, 2015) ("[I]t is insufficient for plaintiff to simply parrot the language of the TCPA and conclusorily allege that defendants used an ATDS."); *Rutledge v. Navy Fed. Asset Mgmt.*, No. 1:23-CV-04241-MHC-RGV, 2024 WL 5480372, at *6 (N.D. Ga. May 1, 2024), *report and recommendation adopted*, 2024 WL 5480371 (N.D. Ga. May 23, 2024) (granting motion to dismiss because plaintiff does not "explain the circumstances that suggest [Navy Federal] used an automatic calling device."). Plaintiff's only allegation is that "Defendant MIC texted the Plaintiff at least twenty nine (29) by means of automatic texting system to a cellphone or pager in violation of 47 U.S.C. §227(b)(l)(A)(iii)."

In addition to the fact that TopGolf is nowhere defined as "Defendant MIC," this is a conclusory allegation that is entitled no weight. Count I should be dismissed with prejudice.

## III. Plaintiff Fails to Plead Facts Suggesting "Willful" or "Knowing" Violations of the TCPA.

If this Court permits this case to proceed, then at the very least Plaintiff's treble damages claim should be struck. The TCPA permits damages of $500, however a plaintiff can recover up to $1,500 if a defendant "willfully or knowingly violated" the relevant statute. 47 U.S.C. § 227(b)(3). This is referred to as trebled damages. Although Plaintiff requests damages of up to $1,500 (Compl. ¶¶ 27, 30), there are no allegations that TopGolf's alleged conduct met this standard.

While other courts throughout the country are split on what is required to plead entitlement to treble damages, the Eleventh Circuit adopted a standard a decade ago. In *Lary v. Trinity Physician Financial & Insurance Services, Inc.*, 780 F.3d 1101, 1107 (11th Cir. 2015), the Eleventh Circuit held in a TCPA case that "the requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute." The court distinguished this from cases holding that a defendant only must know that a "call" was being made, because under that reading "the statute would have almost no room for violations that are not 'willful[] or knowing[]'." Because the plaintiff never alleged that defendant *knew* it was calling *without consent*, and the "bare assertion" in the amended complaint that these were knowing and willful violations was a legal conclusion, the court dismissed the allegations of entitlement to trebled damages. *Id.*

Here, *Lary* instructs that the "bare assertion" of willful and knowing is a "legal conclusion, not an assertion of fact that [the court] must accept as true." *Id.* Because there are no allegations that Defendant knew that it was unlawfully texting a number on the federal do not call list, the claims for damages up to $1,500 should be struck.

## CONCLUSION

This Court should dismiss Plaintiff's Complaint. Because the entire basis of the Complaint is that "text messages" are "calls," and no amendment can fix that this is incorrect as a matter of law, this dismissal should be with prejudice.

Dated: September 24, 2026

Respectfully submitted,

**DENTONS US LLP**

*/s/ Mark A. Silver*

Nathan L. Garroway, Esq.
Georgia Bar No.: 142194
Mark A. Silver, Esq.
Georgia Bar No.: 811928
Lauren J. Towell, Esq.
Georgia Bar No.: 305478

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Nathan.Garroway@dentons.com
Mark.Silver@dentons.com
Lauren.Towell@dentons.com

*Attorneys for Defendant*

## LOCAL RULE 7.1(D) CERTIFICATE OF FONT COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared with one of the font and point selections approved by this Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 pt.

**DENTONS US LLP**

*/s/ Mark A. Silver*
Mark A. Silver, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2026, a copy of the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to pro se Plaintiff's Court's CM/ECF system. The foregoing was also sent via U.S. mail to:

Ricky R. Franklin
708 Brambling Way
Stockbridge, GA 30281
678-650-3733

This 24th day of September, 2026.

**DENTONS US LLP**

*/s/ Mark A. Silver*
Mark A. Silver, Esq.
Georgia Bar No.: 811928

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Mark.Silver@dentons.com

*Attorney for Defendant*